IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **Erik Salaiz**, on behalf of himself and all others similarly situated, | § § § § § | |
| Plaintiff | § | |
| *versus* | § § | |
| **FIRST AMERICAN HOME WARRANTY CORPORATION,** a California Corporation | § § § § § | **Civil Action No. : 3:24-cv-410** |
| Defendant, | § § | |
| And | § § | **DEMAND FOR JURY TRIAL** |
| **LEADER CALLS GROUP, LLC** | § § | |
| Defendant, | § § § § § § § | |

CLASS ACTION COMPLAINT

**INTRODUCTION**

Plaintiff ERIK SALAIZ, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendants First American Home Warranty Corporation ("First American") and Leader Calls Group, LLC ("LCG") to stop their illegal practice of placing, unsolicited telephone calls in violation of the Telephone Consumer Protection Act ("TCPA"). Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigations conducted by his attorney.

**PARTIES**

1. Plaintiff Erik Salaiz (hereinafter "Mr. Salaiz") is an individual residing in or near El Paso, County Texas and was present for all causes of action complained of herein within El Paso, Texas.

2. Mr. Salaiz may be served any relevant papers via email to his counsel Omar Darwich at omar@darwichlegal.com

3. Defendant First American Home Warranty Corporation (hereinafter "First American") is a corporation organized and existing under the laws of California and can be served via its registered agent Registered Agent Solutions, Inc. at 720 14th Street, Sacramento, California 95814.

4. Defendant Leader Calls Group LLC., (hereinafter "Abdulaziz") is a limited liability company existing under the laws of Delaware and can be served via its registered agent Harvard Business Services, Inc. at 16192 Coastal Highway, Lewes, Delaware 19958.

5. Defendants First American and LCG are hereinafter referred to collectively as "Defendants".

**JURISDICTION AND VENUE**

6. This action is brought by Mr. Salaiz pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

7. This Court has jurisdiction over the subject matter of the claims under the TCPA pursuant to 47 U.S.C. § 227(g)(2). This Court further has jurisdiction over the subject matter of the claims under the TCPA pursuant to 27 U.S.C. § 1331 and has pendant jurisdiction over the subject matter of the claims under the Texas Business and Commerce Code pursuant to 28 U.S.C. § 1367.

8. This Court has general personal jurisdiction over the Defendants as they, upon information and belief, authorized unsolicited calls to be placed on their behalf to Texas residents, derive or derived revenue from Texas residents, and sell goods and services to Texas residents and have otherwise availed themselves to the State of Texas.

9. Venue of this suit lies in the Western District of Texas, El Paso Division pursuant to 47 U.S.C. § 227(g)(4) because violations of the TCPA occurred within the Western District of Texas, as more specifically alleged below. Venue further lies in the Western District of Texas, El Paso Division pursuant to 28 U.S.C. § 1391(b) because a substantial part of events giving rise to the claim alleged herein occurred within the Western District of Texas,

**STATEMENT OF FACTS**

10. Mr. Salaiz realleges paragraphs one through nine and incorporates them herein as if set forth here in full.

11. Mr. Salaiz's personal cell phone (XXX) XXX-6688 has been registered on the National Do-Not-Call Registry since March 7, 2024.

12. Mr. Salaiz has never instructed the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry. Mr. Salaiz has been on the National Do-Not-Call Registry at all times relevant to this Complaint.

13. Mr. Salaiz's telephone number 6688 is a residential number.

14. Mr. Salaiz's telephone number 6688 is used for personal purposes and is not associated with business.

15. Defendant First American offers home warranty services to consumers nationwide.

16. Upon information and belief, as part of their marketing, Defendant First American contracted with Defendant LCG to make solicitation calls to thousands of consumers' residential phone numbers on behalf of Defendant First American.

17. Upon information and belief, Defendant LCG employs the use of an automatic telephone dialing system ("ATDS") in furtherance of their telephone marketing campaign on behalf of Defendant First American.

18. Upon information and belief, Defendant Abdulaziz approves of the ATDS Defendant LCG uses as part of Defendant First American's marketing campaign.

19. Upon information and belief, Defendant First American is well aware that the unauthorized phone calls being made on their behalf by LCG are being made in violation of the TCPA.

20. Upon information and belief, Defendant First American authorizes the payments to Defendant LCG for new customer leads that are generated through illegal telemarketing.

21. Defendant First American is a serial TCPA violator and has been sued multiple times for such violations including when Mr. Salaiz sued Defendant First American in 2022, *Salaiz*

*v. First American Home Warranty Corporation*, No. 3:22-cv-00373-FM (W.D.TX., Oct. 21, 2022).

22. Upon information and belief, Defendants First American and LCG have made substantial profit gains through illegal telemarketing.

23. On or about July 18, 2024, Mr. Salaiz sent an email to Mark Silver advising Mr. Silver of additional unsolicited calls Mr. Salaiz phone number 6688 on behalf of Defendant First American in the month of June 2024.

24. Mr. Silver was Defendant First American's counsel when Plaintiff sued Defendant First American in 2022.

25. On or about July 21, 2024, Mr. Silver acknowledged Mr. Salaiz's email and advised Mr. Salaiz that he forwarded this matter to Defendant First American.

26. As of July 21, 2024, Defendant First American was on notice that Mr. Salaiz had received unsolicited calls to his phone number 6688.

27. On or about August 5, 2024, an attorney by the name of Matthew Pitts contacted Mr. Salaiz regarding the unsolicited calls Mr. Salaiz had received on behalf of Defendant First American.

28. Mr. Pitts advised Mr. Salaiz that he represented Defendant LCG and that Defendant LCG are the ones that made the unsolicited calls to Mr. Salaiz on behalf of Defendant First American.

29. On or about August 21, 2024, Plaintiff came to an agreement with Defendants First American and LCG regarding the unsolicited calls Plaintiff received from Defendant LCG in June 2024.

30. Despite Defendants First American and LCG knowing Mr. Salaiz did not want to receive unsolicited calls to his phone number 6688, Defendant LCG willfully sent at least two additional calls to Mr. Salaiz on September 13, 2024, again soliciting home warranty services on behalf of Defendant First American.

31. **Call #1** – On September 13, 2024, at 1:17 PM, Mr. Salaiz received a call to his phone number 6688 from Defendant LCG from phone number 915-200-6217.

32. **Call #1** – Plaintiff answered and was connected to a telemarketer with Defendant LCG who was soliciting home warranty services and the call dropped.

33. **Call #2** - On September 13, 2024, at 1:23 PM, Mr. Salaiz received a call to his phone number 6688 from Defendant LCG from phone number 915-995-1468.

34. **Call #2** – Mr. Salaiz answered and was connected to a telemarketer with Defendant LCG who was soliciting home warranty services.

35. **Call #2** – The telemarketer did not know who he was calling and asked Mr. Salaiz if he was speaking to the "homeowner."

36. **Call #2** – The telemarketer asked Mr. Salaiz qualifying questions regarding home warranty and then with no interruption or disconnection live transferred Mr. Salaiz to Defendant First American.

37. **Call #2** – The representative with Defendant First American asked Mr. Salaiz more qualifying questions and solicited Plaintiff for a home warranty policy on behalf of Defendant First American.



38. The two alleged calls were all made to Mr. Salaiz for the purpose of encouraging the purchase of a home warranty policy on behalf of Defendant First American.

39. The two alleged calls Defendant LCG made to Mr. Salaiz were made using an ATDS.

40. Defendant LCG's ATDS has the capacity to store and produce telephone numbers to be called, using a random or sequential number generator and to dial such numbers.

41. The two alleged calls Defendant LCG made to Mr. Salaiz on behalf of Defendant First American were not made to Mr. Salaiz directly and could have reached anyone in the United States (indicating the call was made using an ATDS).

42. Defendant First American continued to accept new customers from Defendant LCG even after knowing Defendant LCG generates new customers through illegal telemarketing.

43. The two alleged calls were made to Mr. Salaiz, willfully and knowingly.

44. Upon information and belief, Defendants First American and LCG employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

45. Upon information and belief, neither Defendants First American or LCG have a solicitation registration certificate and bond on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents either directly or through telemarketers. Mr.Salaiz is a Texas resident.

46. The https://direct.sos.state.tx.us/telephone/telephonesearch.asp site ("Texas Registration Database") does not contain neither Defendants' registration.

47. Neither Defendants First American or LCG qualify for an exemption under § 302.053.

48. Mr. Salaiz never provided his prior express written consent to receive any of the calls.

49. The alleged calls were nonconsensual encounters that were not made for emergency purposes.

50. Upon information and belief, the alleged calls were placed while knowingly ignoring the national do-not-call registry.

51. Upon information and belief the alleged calls were placed without training their agents/employees on the use of an internal do-not-call policy.

## BASIS FOR LIABILITY

52. Mr. Salaiz realleges paragraphs one through fifty-one and incorporates them herein as if set forth here in full.

53. Even if Defendant First American did not personally make the TCPA violating calls to Plaintiff, they are liable for the TCPA violations under the following theories of vicarious liability: Actual Authority, Apparent Authority, or Ratification.

**ACTUAL AUTHORITY**

54. Mr. Salaiz realleges paragraphs one through fifty-three and incorporates them herein as if set forth here in full.

55. Upon information and belief, Defendant First American authorized and hired Defendant LCG to generate prospective customers through illegal telemarketing calls.

56. Accordingly, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See* In re Rules & Regulations Implementing the TCPA, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995) (emphasis added).

57. In their January 4, 2008, ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

58. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

59. Defendant LCG solicited Mr. Salaiz on behalf of the Defendant First American. Accordingly, Defendant LCG had First American's actual authority to solicit Mr. Salaiz through illegal telemarketing calls.

**APPARENT AUTHORITY**

60. Mr. Salaiz realleges paragraphs one through fifty-nine and incorporates them herein as if set forth here in full.

61. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

[A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct. 28 CC Rcd at 6592 (¶ 46).

62. Upon information and belief, Defendant First American authorized LCG to generate prospective business for them through illegal telemarketing.

63. Defendant LCG called and transferred calls to Defendant First American who solicited Mr. Salaiz for a home warranty policy. The integration of their sales efforts was so seamless that it appeared to Mr. Salaiz that Defendants all appeared to be acting together as the same company.

64. Consumers, including Mr. Salaiz and members of the Class, reasonably believed and relied on the fact that Defendant LCG had received permission to sell, market, and solicit the products of Defendant First American.

65. As a direct and proximate result of LCG's illegal phone calls – which were made on behalf of and with the apparent authority of the other Defendant First American, Mr. Salaiz and Class members suffered actual damages, including their time to answer the violating calls, depleted battery life, wasted time, invasion of their privacy and the nuisance of receiving the calls.

**RATIFICATION**

66.  Mr. Salaiz realleges paragraphs one through sixty-five and incorporates them herein as if set forth here in full.

67.  Defendant First American knowingly and actively accepted business that originated through the illegal calls placed by LCG.

68.  By accepting these contacts and executing contracts with the robocall victims, Defendant LCG "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of Defendant First American, as described in the Restatement (Third) of Agency.

69.  Defendant LCG called Mr. Salaiz and the class and solicited customers to transfer to Defendant First American.

70.  Defendant First American received new customers and the possibility of new business.

71.  Defendant First American ratified Defendant LCG's TCPA violations by knowingly accepting the benefits of new customers and revenue despite the fact that the sale was generated through illegal calling.

72.  Defendant First American further ratified Defendant LCG's TCPA violations by being aware of the violations, being willfully ignorant of the violations or by being aware that such knowledge was lacking.

73.  As a direct and proximate result of LCG's illegal phone calls, Mr. Salaiz and the Class members suffered actual damages, including their wasted time to answer the violating calls, the monies paid to receive the calls, the depleted phone minutes available to them, invasion of their privacy and the nuisance of receiving the calls.

**CLASS ALLEGATIONS**

74. **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of Plaintiff and a class defined as follows:

> **TCPA Class**. All persons in the United States who: (1) from the last 4 years to present (2) Defendants called (3) whose telephone numbers were registered on the Federal Do Not Call registry for more than 30 days at the time.

> **Texas Subclass**. All persons in Texas who: (1) from the last 4 years to present (2) Defendants called (3) whose telephone numbers were registered on the Federal Do Not Call registry for more than 30 days at the time.

75. The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants', Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants' or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

76. **Numerosity**: The exact number of the Class members is unknown and not available to Plaintiff, but individual joinder is impracticable. On information and belief, Defendants' have called hundreds if not thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendants' records.

77. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited messages.

78. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique

defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Class. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

79. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinge on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

80. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

81. Whether the unsolicited calls were caused by the Defendants;

82. Whether the unsolicited calls promoted the Defendants' products or services;

83. Whether the Defendants checked the phone numbers to be called against the Federal Do Not Call registry;

84. Whether the Defendants obtained written express consent prior to sending the calls;

85. Whether members of the Class are entitled to treble damages based on the knowingness and/or willfulness of Defendants' conduct.

86. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this

controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

### INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF DEFENDANTS' ACTIONS

87. Mr. Salaiz realleges paragraphs one through eighty-six and incorporates them herein as if set forth here in full.

88. The calls harmed Mr. Salaiz by causing the very harm that Congress sought to prevent— a "nuisance and invasion of privacy."

89. The calls harmed Mr. Salaiz by trespassing upon and interfering with his rights and interests in his cellular telephone.

90. The calls harmed Mr. Salaiz by intruding upon his seclusion.

91. Mr. Salaiz has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

**First Cause of Action:**
**Violation of 47 U.S.C. § 227(b)**
**Artificial or Prerecorded Voice**
**(On behalf of Plaintiff and the TCPA Class)**
**(Against All Defendants)**

92. Mr. Salaiz realleges paragraphs one through ninety-one and incorporates them herein as if set forth here in full.

93. Defendants and/or their telemarketers or agents placed telephone calls to Mr. Salaiz's and the Class members' cellular and/or residential telephones without having their prior express written consent to do so.

94. The calls were made for the express purpose of soliciting customers for Defendant First American's goods and services.

95. Defendant and/or their telemarketers or agents violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. § 227(b)(1)(B), by placing non-emergency telemarketing calls to Mr. Salaiz and the Class members' cellular and/or residential telephones using an automatic telephone dialing system without their prior express written consent.

96. As a result of its unlawful conduct, Defendants repeatedly invaded Mr. Salaiz's and the Class's personal privacy, causing them to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling them to recover $500 in civil fines for each violation and an injunction requiring Defendants to stop its illegal calling campaign.

97. Defendants and/or their telemarketers or agents made the violating calls "willfully" and/or "knowingly" under 47 U.S.C. § 227(b)(3)(C).

98. If the court finds that Defendants willfully and/or knowingly violated this subsection, the court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

**Second Cause of Action:**
**Violation of 47 U.S.C. § 227(c)**
**Do Not Call Provision**
**(On behalf of Plaintiff and the TCPA Class)**
**(Against All Defendants)**

99.  Mr. Salaiz realleges paragraphs one through ninety-eight and incorporates them herein as if set forth here in full.

100.  The telephone numbers of Mr. Salaiz and the Class are registered on the Do Not Call Registry.

101.  Defendants and/or their telemarketers or agents placed unsolicited phone calls to Mr. Salaiz's and the Class members' DNC registered telephones without having their prior written consent to do so.

102.  Defendants' actions agents constitute violations of 47 U.S.C. § 227(c) of the TCPA, by soliciting telephone numbers listed on the Federal Government's National Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2).

103.  Defendants solicitating phone calls were made for the commercial purpose of selling home warranty services to consumers.

104.  As a result of its unlawful conduct, Defendants repeatedly invaded Mr. Salaiz's and the Class's personal privacy, causing them to suffer damages.

105.  Mr. Salaiz is entitled to an award of at least $500 in damages for each such violation (47 U.S.C. § 227(c)(5)(B)) or $1,500 if the violation is found to be knowing or willful. 47 U.S.C. § 227(c)(5).

106.  Mr. Salaiz also seeks a permanent injunction prohibiting Defendants from making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry.

**<u>Third Cause of Action</u>:**
**Violations of The Texas Business and Commerce Code § 305.053**
**(<u>On Behalf of Plaintiff and the Texas Subclass</u>)**
**(Against All Defendants)**

107.  Mr. Salaiz realleges paragraphs one through one hundred and six and incorporates them herein as if set forth here in full.

108.  The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

109.  The foregoing acts and omissions of Defendants telemarketers and/or their agents constitute multiple violations of the Texas Business and Commerce Code § 305.053, by making non-emergency telemarketing calls to Mr. Salaiz's cellular telephone number without his prior express written consent in violation of 47 U.S.C. § 227 *et seq*.

110.  Mr. Salaiz seeks for himself and the members of the Texas Subclass an award of at least $500.00 in damages for each such violation. Texas Business and Commerce Code § 305.053(b)

111.  Mr. Salaiz seeks for himself and the members of the Texas Subclass an award of up to $1,500.00 in damages for each such knowing or willful violation. Texas Business and Commerce Code § 305.053(c).

**Fourth Cause of Action:**
**Violations of The Texas Business and Commerce Code § 302.101**
**Failure to obtain a Telephone Solicitation Registration Certificate**
**(On behalf of Plaintiff and the Texas Subclass)**
**(Against All Defendants)**

112.   Mr. Salaiz realleges paragraphs one through one hundred and eleven and incorporates them herein as if set forth here in full.

113.   Upon information and belief, Defendants' illegal solicitation sales calls to Mr. Salaiz and the putative class without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

114.   Upon information and belief the actions of the Defendants also violated Texas Business and Commerce Code § 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

115.   A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such.

116.   As a result of the Defendants' violations of Texas Business and Commerce Code § 302.101, Mr. Salaiz may and does seek damages of up to $5,000.00 for each violation. Texas Business and Commerce Code § 302.302(a).

117.   As a result of the Defendants violations of §302.101, Mr. Salaiz seeks all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Erik Salaiz, individually and on behalf of the Class prays for the following relief:

A.  An order certifying the Class as defined above, appointing Plaintiff as the Class representative and appointing his counsel as Class Counsel;

B.  An order declaring that the Defendants actions, as set out above, violate 227(b) of the TCPA;

C.  An order declaring that the Defendants actions, as set out above, violate 227(c) of the TCPA;

D.  An order declaring that the Defendants actions, as set out above, violate the TCPA willfully and knowingly;

E.  An award of $1,500.00 per call in statutory damages arising from the TCPA §227(b) for each intentional violation or in the alternative $500 for each call found not willful or knowing;

F.  An award of $1,500.00 per call  in statutory damages arising from the TCPA §227(c) for each intentional violation or in the alternative $500 for each call found not willful or knowing;

G.  An award of $1,500.00 per call in statutory damages arising from each violation of the Texas Business and Commerce Code § 305.053;

H.  An award of $5,000.00 per call in statutory damages arising from each violation of the Texas Business and Commerce Code § 302.101;

I.  An injunction requiring Defendants to cease sending all unlawful calls;

J.  An award of reasonable attorneys' fees and costs; and

K.  Such further relief as the Court deems necessary, just, and proper.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated this 5th day of November 2024.

Respectfully Submitted,

The Darwich Law Firm, LLC
  /Omar F. Darwich/ _____
Omar F. Darwich
Tx Bar No. 24124686

10921 Pellicano Dr, #100
El Paso, TX 79935

(915) 671-2221
omar@darwichlegal.com

**ATTORNEY FOR PLAINTIFF**

**VERIFICATION STATEMENT**

I, Erik Salaiz, hereby state under oath that I am the Plaintiff in this dispute, that I have read the foregoing complaint, and that it is are true and accurate to the best of my knowledge and belief, except as to matters stated on information and belief, and that as to those matters I believe to be true.

I declare under penalty of perjury that the foregoing verification is true and correct to the best of my knowledge and belief, and as to any matter stated on belief, I believe such to be true.

Dated this 5th day of November 2024.

/_____Erik Salaiz_____/
Plaintiff